IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND

| | |
|---|---|
| ALEXIS JORDAN, | * |
| Petitioner, | * |
| v. | *    Civil Action No. JKB-17-2919 |
| FRANK BISHOP, *Warden, et al.*, | * |
| Respondent. | * |

**MEMORANDUM OPINION**

Self-represented Petitioner Alexis Jordan filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he collaterally attacks his 2008 convictions for crimes including felony-murder, first degree assault, conspiracy, and robbery with a dangerous weapon. ECF 1. Initially Respondents contended that the petition was untimely because Jordan's state court motion for modification of sentence, filed pursuant to Maryland Rule 4-345, did not toll the one-year limitations period applicable to federal habeas petitions. ECF 3 at 6. This Court concluded, however, that in light of the Fourth Circuit decision in *Mitchell v. Green*, 922 F. 3d 187, 198 (4th Cir. 2019), the petition was timely. ECF 9. Accordingly, the Court directed Respondents to address the merits of the petition, which they have done. ECF 14. Jordan has also replied. ECF 15.

The petition is ready for resolution and no hearing is necessary.[1] *See* Loc. R. 105.6;

---

[1] On September 27, 2021, this Court issued an order directing Respondents to file the transcript of the post-conviction hearing. ECF 16. Having subsequently reviewed the record, including Respondent's representation that "[t]o Respondents' knowledge, a transcript of the UPPA hearing currently does not exist," ECF 14 at 12 n. 5, and Petitioner's statement that he "adopts and accepts respondents version concerning: A. The Crime; B. The Trial; C. The Direct Appeal; D. The UPPA Petition, on respondents Supplemental Answer pages 2-11," the Court no longer deems the transcript necessary to rule on the petition. *See* ECF 15 at 2.

*see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

On January 14, 2008, Alexis Jordan was convicted after a jury trial in the Circuit Court for Charles County, Maryland of felony murder and multiple counts of first-degree assault, use of a handgun in a crime of violence, conspiracy, and robbery with a dangerous and deadly weapon. ECF 14 at 7-8 and 14-7. On March 7, 2008, he was sentenced to life plus twenty years. ECF 14-1 at 56.

The Court of Special Appeals summarized the facts adduced at trial as follows:

> [O]n the evening of December 28, 2006, the victims, McGregor, Windley, Robert Barbour, Marco Coates, and Timothy Grimes, were driving to Westdale Court in the Magnum, with Barbour at the wheel, when Barbour received a telephone call from Angel Park. Park was the current girlfriend of Joseph Edwards, the ringleader of the attack, and McGregor's former girlfriend. Park asked Barbour whether he had any "weed" where he was, and who was with him. Barbour denied having "weed" for sale, named his companions, told Park where they were, proceeded to Westdale Court, and parked the Magnum. Coates and Grimes got out to smoke. Barbour, Windley, and McGregor stayed in the car. Park called back and again asked where they were. Barbour told her, and she said she would come see them.
>
> Park did not come to see Barbour and his friends. Instead, a group of men emerged from hiding and ran towards the Magnum while shooting guns. Two men wore masks and carried handguns. Grimes and Coates fled. Windley and McGregor were shot inside the Magnum. The attackers pulled Barbour and Windley from the car, yelled "where the money at?" and searched Barbour's and Windley's pockets. One of the men demanded Windley's coat. Coates, hiding under another car, saw "shots fired" at the Magnum, two men trying to pull Windley from the Magnum, and two men kicking Barbour in the face. Coates testified, "[t]hey did the robbery, whatever, and then one specific guy came back and had a . . . last final shot." The shooter, whom Coates identified as Edwards, "aimed the gun inside the car[.]"
>
> Darrell Smith, one of the attackers, and Angel Park testified for the State. Smith testified that he had gone to Charles County that night in

2

> [Jordan]'s car with Edwards, [Jordan], and [Jordan]'s girlfriend, who was driving. Angel Park followed in her car with Dewayne Thompson and Eugene Green. The group stopped at a store, and [Jordan] bought ski masks. Park testified that Edwards telephoned her and asked her to find out where Barbour was. Park assumed that Edwards "was going to rob" Barbour and his companions. Park called Barbour, asked him where he was, and told Edwards. Park told Barbour that she was coming to see him so that he would stay in one place. [Jordan]'s group, still in two cars, drove to "some townhouses," where the women parked the cars, and the five men got out. The men walked behind some townhouses and heard men laughing in the parking lot. Edwards said, "There they go," and pulled down his face mask. The group "all ran towards a Dodge Magnum." Smith saw Edwards fire into the car and then saw [Jordan] fire into the car "multiple times."
>
> The attackers returned to the cars in which they had arrived and met later in Oxon Hill. Smith heard Edwards telling [Jordan] to get rid of the guns and saw Edwards hand a handgun or guns to [Jordan].

*Jordan v. State*, Appeal No. 08-92, slip op. at 2–3 (Md. Ct. Spec. App. June 20, 2010); ECF 3-2 at 3-5.

## FACTUAL AND PROCEDURAL HISTORY

### I. Direct Appeal

Jordan appealed his convictions to the Court of Special Appeals of Maryland, posing the following questions:

1. Was he entitled to reversal of the convictions and/or sentences for six counts of conspiracy, three counts of use of a handgun in the commission of a crime of violence, one count of robbery with a deadly and dangerous weapon, and three counts of first-degree assault?

2. Did the trial court err in precluding consultation between Jordan and counsel prior to Jordan's election whether to testify?

3. Did the trial court err in admitting evidence of misconduct for which Jordan was not on trial?

By unpublished opinion dated June 30, 2010, the court affirmed Jordan's convictions, ordered several of his sentences to merge, and remanded the case to determine whether a

particular sentence was to be served consecutively or concurrently to the sentence for felony murder. ECF 3-2 at 11-20.

Relevant to the claims in his federal habeas petition, in discussing trial counsel's handling of evidence of "other crimes," Jordan had argued on appeal that the trial court erred by admitting Jordan's testimony that "one of [his] forty caliber guns was confiscated by the DC Police[.]" ECF 3-2 at 23. Jordan gave this testimony after the prosecutor had asked him more than 40 questions about State's Exhibit 115, which was a transcription of Jordan's statement to the police:

> [PROSECUTOR]: Now, also...let's go to...one of your forty caliber guns was confiscated by the DC Police?
>
> [JORDAN]: Yes.
>
> [DEFENSE COUNSEL]: Objection, Your Honor. Ask to approach.
>
> . . . .
>
> [DEFENSE COUNSEL]: We'd object to it. State knows it's improper. It's other crimes evidence. It's completely irrelevant.
>
> . . . .
>
> [PROSECUTOR]: It's in his statement [i.e., State Exhibit 115].
>
> . . . .
>
> [PROSECUTOR]: Statement is in evidence.
>
> . . . .
>
> [COURT]: I'm going to overrule it.

ECF 3-2 at 23–34. During the State's case-in-chief, the prosecutor introduced as State's Exhibit 115, without objection from defense counsel, Jordan's statement that he had previously owned a ".40 caliber Ruger, black on black, but D.C. police took that gun from me during a traffic stop." ECF 3-2 at 24.

4

The Court of Special Appeals concluded that trial counsel waived the assignment of error regarding Jordan's testimony by (1) allowing substantively cumulative evidence—State's Exhibit 115 to be admitted separately without objection and (2) waiting to object until after Jordan gave his challenged testimony without moving to strike it. ECF 3-2 at 24-25.

Jordan's subsequently filed a petition for certiorari in the Court of Appeals of Maryland which was denied. *Jordan v. State*, 416 Md. 274 (2010) (table).

## II. Post-Conviction Proceedings

On April 15, 2011, Jordan filed a petition for post-conviction relief in the Circuit Court for Charles County that was twice supplemented by his post-conviction counsel. ECF 14-1 at 143. At the post-conviction hearing on July 6, 2012, Jordan, by his counsel, requested a new trial, and in the alternative, if a new trial was not granted, sought leave to file a motion to reconsider his sentence. As grounds for a new trial, he argued that trial counsel provided constitutionally ineffective assistance by failing to: (1) object to certain hearsay testimony; (2) call Rhonda Bazemore as a witness; (3) argue fully the motion for acquittal; (4) prevent other crimes evidence from being presented to the jury; and (5) object to improper statements made by the prosecutor in her closing argument. Jordan also complained of a failure to file a motion for reconsideration after resentencing under Maryland Rule 4-345(e). ECF 14-1 at 218-219. On August 27, 2012, the petition was granted in part and denied in part. The court determined that Jordan's claim that his counsel failed to file a motion for reconsideration was meritorious and awarded him the right to file a belated motion. The court rejected all of Jordan's other claims and denied his request for a new trial. *Id.* at 218-219, 223.

On June 11, 2013, the Court of Special Appeals summarily denied Jordan's application for leave to appeal. *Id.* at 236-237.

### III. Petition for Federal Habeas Relief

On October 2, 2017, Jordan's § 2254 petition was received by this Court for filing. The petition presented three claims of ineffective assistance of counsel. Specifically, Jordan argued that trial counsel provided constitutionally ineffective assistance by failing to: (1) object to a portion of the prosecutor's rebuttal summation calling defense counsel's closing argument a "manipulation" of the evidence, ECF 1 at 5; ECF 1-1 at 1; (2) object to the introduction of "other crimes" evidence, specifically, Jordan's own statement that he previously owned a gun confiscated during a traffic stop, ECF 1 at 7; ECF 1- 1 at 1; and (3) object to hearsay testimony by an accomplice turned State's witness that, shortly after the crimes were committed, another accomplice told Jordan to get rid of their guns. ECF 1 at 8; ECF 1-1 at 1.

Respondents filed a limited response to the petition, arguing it was barred by the statute of limitations. The case was stayed and held in abeyance pending a decision in *Mitchell v. Green*, 922 F.3d 187 (4th Cir. 2019). On April 17, 2019, the United States Court of Appeals for the Fourth Circuit held in *Mitchell* that a motion to reduce sentence under Maryland Rule 4-345 tolls the one-year limitations period. 922 F.3d at 195. In light of that decision, this Court directed Respondents to supplement their response to address the petition on its merits[2] and provided Jordan an opportunity to file a reply, which the parties have done.

### STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28

---

[2] Respondents no longer assert the petition is time-barred. ECF 14 at 3, n. 1.

U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable

7

application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Jordan argues that his trial counsel rendered constitutionally ineffective representation by: failing to object to certain statements in the prosecutor's closing arguments; failing to object to evidence of other crimes; and failing to object to hearsay evidence. ECF 1.

8

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686; *see also Buck v. Davis*, 580 U.S. ___, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there

9

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## ANALYSIS

### I.   First Claim – Closing Arguments[3]

Jordan argues that counsel failed to object to the prosecutor's closing arguments, in which she repeatedly stated that defense counsel "manipulated" the evidence. ECF 1, 1-1. Prior filings indicate that Jordan also believed his counsel to be ineffective for failing to object to the prosecutor's suggestion that counsel could have or should have elicited more specific testimony from a key cooperating witness, thereby shifting the burden of proof. ECF 14-1 at 201 (Petitioner's supplemental petition for post-conviction relief, Charles County Circuit Court).[4]

The record shows that in her closing argument, the prosecutor (ASA Piper) stated, "[Darrell Smith] says, we're standing to the rear. [Trial counsel] never asked, well, is it the center rear? The left rear? Right rear? He marks for you. And, remember, Defense counsel, he had his map. And, he says, okay. No, it's right over here, right? He never asked Darrell Smith to come over here and mark this map." ECF 14-6 at 91-92 (Trial Transcript, January 11, 2008). The record also shows that the prosecutor repeatedly argued that defense counsel "manipulated the evidence." *Id.* at 90-92, 104, 108, and 113.

Here, the post-conviction court found:

---

[3] Jordan's petition for habeas corpus pursuant to 28 U.S.C. § 2254 contains only brief statements of his legal claims, with no supporting facts or allegations. ECF 1 at 5 ("attorney fail to object to closing arguments"), 7 ("other crimes evidence admitted without counsel objection"), and 8 ("attorney fail to object to hearsay evidence"). With his petition, Jordan submitted an attachment that includes a brief paragraph addressing each of his claims. ECF 1-1. These paragraphs consist of non-specific criticisms of the post-conviction court's decision. It appears that the specific issues Jordan intends to raise in his petition regarding each of the claims are the same as those addressed by the state post-conviction court. Jordan more clearly addresses the details of two of his three claims in his reply to Respondents' supplemental response. ECF 15.

[4] In his reply to Respondent's supplemental response to the petition (ECF 15), Jordan does not address the issue of the prosecutor's closing argument remarks regarding defense counsel's failure to elicit certain specific testimony. ECF 15. However, this issue was addressed by the post-conviction court, with which Jordan clearly expressed his disagreement in his petition. ECF 1-1. This issue will, therefore, be considered part of Jordan's claim.

> ASA Piper's comments suggested that defense counsel had misconstrued the evidence. Prosecutors also have wide latitude in presenting closing argument and they too may engage in "oratorical conceit." *Hunt v. State*, 321 Md. 387, 434-35 (1990). ASA Piper's statements did not rise to the level of misconduct and trial counsel was not required to object to them. Closing argument is an opportunity for the attorneys to urge conclusions that can be drawn from the evidence presented during trial. By doing so, an attorney is expected to characterize the evidence in a light most favorable to his/her position. It is not misconduct for the prosecution to argue the defense misconstrued the evidence.

ECF 14-1 at 223. The post-conviction court also found that the decision by Jordan's counsel to not object or seek a curative instruction to avoid bringing attention to the fact that counsel did not ask the witness to be more specific was a reasonable tactic and did not amount to ineffective assistance of counsel. Finally, the post-conviction court found that "[t]o the extent SAS Piper's argument was overbroad defense counsel offered an acceptable tactical basis for not objecting." *Id.* at 222.

The state court's determinations that ASA Piper's statements in closing arguments did not amount to misconduct, that defense counsel was not obligated to object to the statements, and that defense counsel's decision not to object were reasonable and supported by the record. Therefore, the determinations are entitled to a highly deferential review under the habeas statute and as interpreted by case law. Jordan has not demonstrated that trial counsel's failure to object to statements made in closing arguments was "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. ASA Piper's comments regarding the locations on a map presented by defense counsel without specificity was a fair response to defense counsel's presentation. When "the defendant opens the door to an argument, it is fair advocacy for the prosecution to enter." *Ivey v. Catoe*, 36 F. App'x 718, 733 (4th Cir. 2002) (quoting *United States v. Garcia-Guizar*, 160 F.3d 511, 522 (9th Cir. 1998)). Further, characterization of defense counsel's arguments as "manipulation" of the evidence is

simply advocacy on the part of the prosecutor. None of these statements merited an objection, and the failure to object to them was not prejudicial. The post-conviction court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington*, 562 U.S. at 103.

Jordan has failed to present a viable claim of ineffective assistance of counsel on this claim. This issue presents no basis for relief.[5]

## II. Second Claim: Other Crimes Evidence

Next, Jordan argues that counsel's failure to object to evidence of other crimes was constitutionally ineffective. ECF 1 at 7. Jordan does not specifically explain this claim in his petition. However, he addresses this issue in more detail in his reply to Respondent's supplemental response. ECF 15 at 10. Jordan claims that the fact that his gun was confiscated by District of Columbia police is prejudicial evidence of other crimes. *Id.*

With regard to this claim, the post-conviction court found:

Although trial counsel might have precluded mention of other prior gun possession/confiscation from State's Exhibit 115, failure to do so does not rise to the level of ineffective assistance under the *Strickland* test. In State's Exhibit 115, when asked about guns he had previously owned, Jordan responded, "A .40 caliber Ruger, black on black, but D.C. police took that gun from me during a traffic stop." On cross examination Jordan was asked, "one of your forty caliber guns was confiscated by the DC police?" Jordan responded, "yes." Trans. Jan. 10, 2008 p. 96. **The jury never heard why the gun was confiscated nor why he was stopped by the police.** Counsel had concluded that it was tactically advantageous for the jury to hear that guns Jordan had possessed had not been used in the crime under discussion. There is no basis on which to conclude that this approach was disadvantageous.

---

[5] In his reply to Respondents' supplemental response to his petition, Jordan asserts for the first time that his trial counsel was ineffective for failure to raise the issue of the prosecutor's statements at closing argument on direct appeal. ECF 15 at 9. This is the first time that Jordan has raised this claim in the habeas proceeding, and he has not previously raised this claim in the state courts. Therefore, this claim is not properly before the Court. Even if the claim were properly presented, Jordan is not entitled to relief. As noted, counsel did not err in failing to object to the prosecutor's closing argument.

13

ECF 14-1 at 221-222 (Charles County Circuit Court, Post-Conviction Memorandum and Order) (emphasis added). Jordan has not demonstrated that evidence of other crimes was introduced at his trial, much less that his counsel was ineffective for not objecting to it. As the post-conviction court pointed out, "[t]he jury never heard why the gun was confiscated nor why he was stopped by the police." ECF 14-1 at 222. Jordan chose to testify and chose to answer questions regarding his possession of a gun and its confiscation. His attorney, as explained by the post-conviction court, had a reasonable strategy of demonstrating that Jordan's gun was not used in the crime for which he was being tried. Jordan has failed to "show that the state court's ruling on the claim ... was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 20 (2013). On this record, the post-conviction court's ruling was not contrary to, nor an unreasonable application of, *Strickland*. No basis for relief under 28 U.S.C. § 2254(d) has been stated.

### III. Third Claim: Hearsay Evidence

Lastly, Jordan argues that trial counsel was ineffective when he failed to object to hearsay evidence. ECF 1 at 8.[6]

In denying this claim, the post-conviction court found:

Jordan argued that trial counsel rendered ineffective assistance by failing to object to hearsay testimony from state witness Darrell Smith. On direct examination the following exchange occurred:

STATE'S ATTORNEY PIPER: And, what were they talking about?

WITNESS DARRELL SMITH: He was telling...

---

[6] In his reply to Respondent's supplemental response, Jordan clearly states that he is raising two claims, and proceeds to address two of the three claims in his petition: the closing arguments and evidence of other crimes. ECF 15 at 2. While Jordan may have abandoned his third claim regarding hearsay evidence, the Court will address it nonetheless in deference to his self-represented status.

14

>    STATE'S ATTORNEY PIPER: He who?
>
>    WITNESS DARRELL SMITH: Mr. Joseph was telling [Defendant] to get rid of the guns.

> Jordan argued that Mr. Joseph's statement to Defendant telling him to get rid of the guns used in the crime was inadmissible hearsay and his trial counsel should have objected to it.
>
> An objection would have been of no consequence since the quoted language was not hearsay; rather, it was an imperative statement (not declarative) and involved no factual averment/report. Furthermore, even a hearsay statement uttered by a co-conspirator during the course and in furtherance of a conspiracy would have been admissible under Rule 5-803(a)(5).

ECF 14-1 at 219.

This Court cannot identify any aspect of the post-conviction court's reasoning that is contrary to or an unreasonable application of clearly established federal law, or that is based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). As explained by the post-conviction court, the statements at issue do not constitute hearsay as the statements were imperative, not declarative. Furthermore, the statements were made by a co-conspirator and would have been admissible as an exception to the hearsay rule. The post-conviction court's determination that Jordan failed to meet his burden of establishing that his counsel's conduct was deficient or prejudicial constitutes a reasonable application of *Strickland*.

As there was no evidentiary error upon which to object, defense counsel was not ineffective. Jordan's final claim of ineffective assistance is not a basis for relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner must make a "substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects constitutional claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation omitted). When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Jordan has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Jordan may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied. A separate Order follows.

Dated this 29 day of Sept, 2021.

FOR THE COURT:

James K. Bredar
Chief Judge